Lory R. Lybeck
Benjamin R. Justus (admitted *pro hac vice*)
Attorney for Defendant Ryan Blake
Lybeck Pedreira & Justus, PLLC
Fifth Floor – Chase Bank Building
7900 SE 28th Street
Mercer Island, WA 98040
Email: ben@lpjustus.com
(206) 230-4255 /phone

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **VOLTAGE PICTURES, LLC**, a California Limited Liability Company, and **DALLAS BUYERS CLUB, LLC**, a Texas Limited Liability Company,<br><br>                                   Plaintiffs,<br><br>vs.<br><br>**RYAN BLAKE**,<br><br>                                   Defendant | Case No.: 3:14-cv-1875-AC<br><br>DEFENDANT RYAN BLAKE'S RESPONSE TO PLAINTIFFS' MOTIONS AGAINST ANSWER AND COUNTERCLAIMS |

## I.    BACKGROUND AND INTRODUCTION

During his deposition under oath, several days before plaintiffs made the ill-advised

decision to name him to this lawsuit, Ryan Blake testified as follows:

> Q. Okay. Please describe your use of BitTorrent.
> A. I didn't download "Dallas Buyers Club."
> Q. Please describe your use of BitTorrent.
> A. I did not download "Dallas Buyers Club."
> …
> Q. Have you ever watched "Dallas Buyers Club"?
> A. No.

DEFENDANT RYAN BLAKE'S RESPONSE TO PLAINTIFFS'
MOTIONS AGAINST ANSWER AND COUNTERCLAIMS                    PAGE **1** OF 15

*See* February 13, 2015 Deposition of Ryan Blake, Justus Dec., Exhibit A, at 14:12-16, 44:2-3.

Mr. Blake further testified that he had a roommate who had used various computer devices (*id.*, at 18:18-25), and who had authority to change the password protecting the wireless internet network in the apartment they shared (*id.*, at 15: 8-19). Mr. Blake testified that he did not know about his roommate's recent use of BitTorrent (*id.*, at 19:4-9), but this did not foreclose the possibility that his roommate (or his roommate's friends or guests) could have infringed plaintiffs' motion picture, *Dallas Buyers Club*, without Mr. Blake's knowledge or permission. Mr. Blake also testified that, to the best of his limited knowledge, and based on information from his roommate, the network password was relatively simple, and that the network was subject to being subverted, or "hacked." *Id.*, at 39:15 to 40:24. Mr. Blake testified that he lived in an apartment complex with "150 people within the radius of our Wi-Fi signal." *Id.*, at 41:12-18.

Disregarding all of this sworn testimony, and based on the claimed suspicion of plaintiffs' counsel that Mr. Blake must have been "lying," plaintiffs personally sued and have continued to prosecute this case against Mr. Blake alone, invoking various onerous procedures—including these Motions Against Answer and Counterclaims (Doc. 23, hereinafter "Motions")—and causing him to incur significant attorney's fees, anxiety and distress. They have ignored or rejected numerous intervening offers, pleas and demands for dismissal. At times, they have also requested that Mr. Blake undergo a polygraph examination and pay half of the associated cost (*see, e.g.*, Motions, at p. 3), despite the general inadmissibility and widely known unreliability of this process. *See, e.g., State v. Brown*, 297 Ore. 404, 687 P.2d 751 (1984).

In this case, like any BitTorrent infringement case, it is undisputed that the investigation conducted by plaintiffs was not capable of proving that it was Mr. Blake who in fact committed the alleged infringement. Tellingly, even after conducting the deposition and adding Mr. Blake to

DEFENDANT RYAN BLAKE'S RESPONSE TO PLAINTIFFS'
MOTIONS AGAINST ANSWER AND COUNTERCLAIMS                    PAGE **2** OF **15**

the lawsuit, plaintiffs alleged both a theory of direct infringement, and a mutually inconsistent and vague "ALTERNATE THEORY" which alleges that unnamed "others" were the actual infringers. *See* Doc. 10, at p. 9-11. Plaintiffs' complaint speaks in grandiose terms about plaintiffs' general financial interests, the business and marketing operations of "torrent sites," and a host of other broader concerns and third-party conduct for which Mr. Blake cannot possibly be held responsible. *Id.*, at ¶¶22-24, 32, 34, 35. All of this belies the improper and ulterior motives of plaintiffs in prosecuting this case against Mr. Blake alone. Therefore, plaintiffs' suing and invoking expensive procedures to the detriment of Mr. Blake, while willfully ignoring Mr. Blake's exculpatory testimony and failing to conduct further investigation of "others," gives rise to a *prima facie* case of abuse of legal process. It also makes completely appropriate the assertion of the various affirmative defenses that Mr. Blake has raised.

Nonetheless, through their Motions, plaintiffs seek to deprive Mr. Blake of the chance to even seek discovery on his defenses and counterclaims. They do this by arguing a motley assortment of legal standards which are variously inapplicable and extremely onerous for plaintiffs to meet. Most ironically, plaintiffs seek dismissal at the pleading stage of Mr. Blake's asserted "vague allegations" at the same time they prosecute Mr. Blake under *a pleading that does not even commit to a position on whether or not Mr. Blake committed direct copyright infringement*. The Court should not strip Mr. Blake of his defenses and counterclaims at this early stage. Plaintiffs' Motions are without merit and must be denied.

## II.    DISCUSSION

### A. The Standards Applicable to Plaintiffs' Motions.

#### 1. Rule 12 Standards are High for Plaintiffs.

When considering the sufficiency of allegations on a Fed.R.Civ.Pro. 12(b)(6) motion to

dismiss, the court must view the allegations in a light most favorable to the non-moving party, must presume all factual allegations of the complaint to be true, and must draw all reasonable inferences in favor of the nonmoving party. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The issue is not whether a claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "Of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966 (2007) (citations omitted).

"Motions to strike are disfavored and infrequently granted." *Giuliano v. Anchorage Advisors, LLC*, 19 F. Supp. 3d 1087, 1091 (D. Or. 2014), citing *Stabilisierungsfonds Für Wein v. Kaiser Stuhl Wine Distribs. Pty., Ltd.*, 647 F.2d 200, 201, 201 n.1 (D.C. Cir. 1981) (other citations omitted). Thus, a Rule 12(f) motion to strike should not be granted unless it "can be shown that no evidence in support of the allegation would be admissible." *Pease & Curren Ref., Inc. v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990) (internal quotation marks omitted), abrogated on other grounds by *Stanton Rd. Ass'n v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).

### 2. Rule 9(b) is Inapplicable.

Fed.R.Civ. Pro. 9(b)'s heightened pleading requirements apply only to "averments" of fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a). *Id.* The Rule itself provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ. Pro. 9(b).

DEFENDANT RYAN BLAKE'S RESPONSE TO PLAINTIFFS'
MOTIONS AGAINST ANSWER AND COUNTERCLAIMS                    PAGE **4** OF 15

Here, Mr. Blake has made no counterclaims for fraud under common law or statute, and the word "fraud" appears nowhere in his pleading. Plaintiffs' self-serving invocation of Rule 9(b) has no application here.[1]

### 3.   ORS 31.150: A "Low Bar" For Mr. Blake.

A "two-step burden-shifting process" governs the resolution of a special motion to strike under ORS 31.150. *Young v. Davis*, 259 Ore. App. 497, 501, 314 P.3d 350 (2013). In accordance with ORS 31.150(3), a court must first determine "whether the [moving party] has met its initial burden to show that the claim against which the motion is made 'arises out of' one or more protected activities described in ORS 31.150(2)." *Id.* Second, if the moving party meets that burden, the court must determine whether the other party has "establish[ed] that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Id.* (internal quotation marks omitted).

The evidence that Mr. Blake needs to present is only that which is sufficient to meet the "low bar" established by ORS 31.150 "to weed out meritless claims meant to harass or intimidate" a defendant. *Young*, 259 Ore. App. at 508; *see also Staten v. Steel*, 222 Ore. App. 17, 32, 191 P.3d 778 (2008), rev. den., 345 Ore. 618, 201 P.3d 909 (2009) ("The purpose of the special motion to strike procedure, as amplified in the pertinent legislative history, is to expeditiously

----

[1] Even if the Court were to determine that some of Mr. Blake's statements were "fraud averments," this would not require any more specificity in the pleading of his claims as a whole. *See Vess*, *supra*, 317 F.3d at 1104 ("To require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments, however, serves no similar reputation-preserving function, and would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a).")

DEFENDANT RYAN BLAKE'S RESPONSE TO PLAINTIFFS'
MOTIONS AGAINST ANSWER AND COUNTERCLAIMS                    PAGE **5** OF **15**

terminate *unfounded* claims that threaten constitutional free speech rights, not to deprive litigants of the benefit of a jury determination that a claim is *meritorious.*" (Emphases in original.))

**B. The Known Inaccuracy of Plaintiffs' Investigation and the Recognized Potential for Abuse of Process.**

As this Court is no doubt aware, plaintiffs' lawsuit against Mr. Blake is but one of thousands of essentially similar cases that these plaintiffs and other film and pornography producers have filed against countless ordinary citizens in recent years, alleging infringement through the use of BitTorrent technology.  In grappling with these cases, this Court and many other U.S. Courts have recognized the basic flaw and inherent limitation in the remote, online investigation of IP addresses engaged in BitTorrent activity: they cannot identify an actual person responsible for the alleged infringement.  As this Court has explained:

> For instance, the various BitTorrent cases in this district have already demonstrated some IP address are dynamic, some routers associated with the IP address are unsecured, more than one user shares an account associated with an IP address, some BitTorrent clients are configured in such a manner so as to only allow downloading and prevent uploading, and some IP addresses are associated with institutional accounts such as businesses or schools with a large amount of users.

*Voltage Pictures, LLC v. Does*, 2013 U.S. Dist. LEXIS 66729 (D. Or. May 4, 2013), at *9.

Because of this fundamental inaccuracy, many U.S. Courts have questioned whether a given claim against an ISP subscriber like Mr. Blake based on such investigations is even plausible. *See, e.g.*, *Malibu Media, LLC v. Doe*, 2014 U.S. Dist. LEXIS 174225, at *11 (D. Md. Dec. 16, 2014) ("…some courts have adopted the view that an IP address is not-or may not be-a sufficient basis on which a plausible claim can lie against a subscriber."); *Elf-Man, LLC v. Cariveau*, 2014 U.S. Dist. LEXIS 6453, at *8 (W.D. Wash. Jan. 17, 2014) ("While it is possible that one or more of the named defendants was personally involved in the download, it is also possible that they simply failed to secure their connection against third-party interlopers."); *Malibu Media, LLC v.*

DEFENDANT RYAN BLAKE'S RESPONSE TO PLAINTIFFS'
MOTIONS AGAINST ANSWER AND COUNTERCLAIMS                    PAGE **6** OF 15

*Tsanko*, 2013 U.S. Dist. LEXIS 169186, at *27 (D.N.J. Nov. 30, 2013) ("The Court questions whether these allegations are sufficient to allege copyright infringement stemming from the use of peer-to-peer file sharing systems where the Defendant-corporation is connected to the infringement solely based on its IP address."); *AF Holdings LLC v. Rogers*, 2013 U.S. Dist. LEXIS 11929, at *6 (S.D. Cal. Jan. 29, 2013) ("Due to the risk of 'false positives,' an allegation that an IP address is registered to an individual is not sufficient in and of itself to support a claim that the individual is guilty of infringement."); *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) ("[I]t is no more likely that the subscriber to an IP address carried out a particular computer function—here the purported illegal downloading of a single pornographic film—than to say an individual who pays the telephone bill made a specific telephone call.")  At least one such case has been dismissed, *sua sponte,* on this basis alone. *See* Justus Dec., Ex. B (Mar. 20, 2014 Order in *Malibu Media, LLC v. Doe*, No. 1:14-cv-20213-UU (S.D. Fla.))

    This Court and many others have also recognized the serious potential for abuse of process that arises from BitTorrent cases just like the present case. *See e.g.*, *Voltage Pictures, LLC v. Does*, 2013 U.S. Dist. Lexis 66729, at *16 (D. Or. May 4, 2013) ("…it has now become apparent that plaintiffs' counsel seeks to abuse the process and use scare tactics and paint all Doe users, regardless of degree of culpability in the same light."); *Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 89286, at *5 (C.D. Cal. Jun. 27, 2012) ("…the subscriber may not be the actual infringer. For instance, a person may be the subscriber, but his roommate is the actual infringer…the potential for abuse is very high."); *AF Holdings LLC v. Rogers*, 2013 U.S. Dist. LEXIS 11929, at *7 (S.D. Cal Jan. 29, 2013) ("…due to the potential for abuse in these types of cases, the Court wants to make sure that Plaintiff's contention is supported by evidence that goes beyond the

DEFENDANT RYAN BLAKE'S RESPONSE TO PLAINTIFFS'
MOTIONS AGAINST ANSWER AND COUNTERCLAIMS                    PAGE **7** OF **15**

identity of the subscriber to the IP address."); *Voltage Pictures, LLC v. Doe*, 2013 U.S. Dist. LEXIS 47520, at *16-17 (S.D. Ga. Apr. 1, 2013) (Court "cannot overlook the sheer number of lawsuits, and the potential for abuse that they pack, flooding the federal courts.")

## C. The Appropriate Pleading of Ryan Blake's Counterclaims and Defenses.

### 1. Abuse of Legal Process.

Abuse of process is the perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause. *Larsen v. Credit Bureau, Inc.*, 279 Ore. 405, 408, 568 P.2d 657 (1977). "[T]he essential elements of the tort are: 'first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding.' " *Id.*, quoting Prosser, Law of Torts 857, § 121 (1971).

Here, Mr. Blake has pled these elements above and beyond what is required.  Specifically, Mr. Blake has pled: that he has never infringed or even viewed *Dallas Buyers Club* (Doc. 21, Counterclaims, ¶6); that he has testified to his innocence under oath, in discovery responses, and in countless other communications to plaintiffs' counsel (*id.*); that, despite what plaintiffs knew about the possibility of misidentifying Mr. Blake as an infringer, plaintiffs failed to perform reasonable and appropriate further investigation before naming him in this lawsuit (*id.*, ¶7); that plaintiffs' suit intends to utilize the burdensome and expensive nature of the litigation process to coerce Mr. Blake to pay plaintiffs money in settlement, to intimidate him and others so that they might act in a manner which serves plaintiffs' financial interests, for purposes of general deterrence, and for other improperly-motivated purposes (*id.*, ¶8); and that plaintiffs' unreasonable acts and omissions have caused Mr. Blake to expend unnecessary legal expenses and to suffer anxiety and emotional distress. *Id.*, ¶9.

Plaintiffs' discussion of this counterclaim discounts the severity of their conduct and the

harms that they have inflicted upon Mr. Blake, while selectively ignoring many of the specific allegations summarized above. Worse, plaintiffs' legal citations are misleading. By no means does *Clausen v. Carstens*, 83 Ore. App. 112, 730 P.2d 604 (1986), hold that legal expenses, anxiety and emotional distress are not compensable damages. In no way does *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487(1st Cir. 2011), condone the use of a copyright lawsuit against an individual as a means to promote a plaintiff's ulterior goals of coercing the defendant to pay money in settlement; intimidating the defendant and others so that they might act in a manner which serves the plaintiff's financial interests; or for purposes of general deterrence.

More important, this Court, in a prior file-sharing copyright case with analogous facts, has determined that a claim for abuse of legal process arising from the plaintiffs' failure to properly investigate a third-party who might have been responsible for alleged infringement should survive *summary judgment*, much less dismissal at the pleadings stage. *See Andersen v. Atlantic Recording Corp.*, 2010 U.S. Dist. LEXIS 44168, at *27-28 (D. Or. May 4, 2010).

In addition to all the inferences to which he is entitled at this pleading stage, the allegations of Mr. Blake's counterclaim must also be viewed in light of plaintiffs' inexplicable disregard for the sworn deposition testimony he provided before plaintiffs dragged him into this suit; the undisputed lack of accuracy plaguing plaintiffs' IP address investigation (the only evidence plaintiffs could offer to rebut Mr. Blake's testimony); and the widely recognized potential for abuse arising from lawsuits just like this one, all of which are discussed in detail above. Under these circumstances, plaintiffs cannot deprive Mr. Blake of his ability to present his counterclaim through the doctrinaire invocation of protections that may be afforded to ordinary litigants who file and prosecute lawsuits in a responsible manner. To the contrary, plaintiffs have utilized the legal process in an abusive manner, and Mr. Blake is entitled to an opportunity to prove it before

this Court.

## 2.  Declaration of Non-Infringement.

Plaintiffs can point to no binding precedent which holds that there can be no proper counterclaim for a declaration of non-infringement.  As plaintiffs acknowledge, this claim is routinely filed in copyright litigations.  Here, where plaintiffs have raised in their "ALTERNATE THEORY" the prospect that the direct infringement may have been committed by "others," and also that it "is causing…and will continue to cause plaintiffs great and irreparable injury" (Doc. 10, ¶64), Mr. Blake has a particular interest in having a specific determination that he personally did not commit infringement.  Especially at the pleadings stage, considering all inferences to be drawn in his favor, Mr. Blake's claim for declaratory relief should stand.

## 3.  Affirmative Defenses.

Disregarding typical practices, and in spite of this Court's observation that "[m]otions to strike are disfavored and infrequently granted," *Giuliano, supra*, 19 F. Supp. 3d at 1091, plaintiffs seek to divest Mr. Blake of the opportunity to prove even one of his properly stated affirmative defenses.

As regards Mr. Blake's first defense for failure to state a claim, plaintiffs provide no legal citation suggesting that his particular pleading is in any way improper.  In fact, this defense is utterly standard, and there is no proper basis for striking it.

As for the second defense of copyright misuse, plaintiffs' citation to *Voltage Pictures, LLC v. Revitch*, 2015 U.S. Dist. LEXIS 10330 (D. Or. Jan. 23, 2015), is misplaced.  There, the issue was a *counterclaim* for copyright misuse, not an affirmative defense. As such, this Court in *Revitch* explained: "This is not to say the issue of whether defendant is in fact liable for copyright violations engaged in by others may not be litigated, only that defendant may not properly allege *a*

*counterclaim* for copyright misuse." *Id.*, at *15 (emphasis added).

As for the third defense, unclean hands, plaintiffs' legal citations are even more spurious. While plaintiffs cite *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 258 F.R.D. 663 (W.D.Wash. 2009), for the proposition that "[a[ defense of unclean hands sounds in fraud and must comply with FRCP 9(b)" (Motions, at p. 13), the case actually holds that "the Court finds it unnecessary to discuss the parties' arguments with respect to FRCP 9(b)." *Campagnolo S.R.L.*, 258 F.R.D. at 667.  Moreover, the decision in *Campagnolo* was highly fact-specific and based on the court's conclusion that the defendant's "claims are far too attenuated from the claims raised by [the plaintiff] to justify their inclusion in this lawsuit." *Id.*, at 666.  Here, Mr. Blake's assertion of the unclean hands defense arises directly from plaintiffs' inequitable and unfair conduct as it relates to specifically to him and the subject matter of this lawsuit.

As regards the fourth defense, excessive damages in violation of the Due Process Clause, plaintiffs' cited quotation from *Capitol Records, Inc. v. Thomas–Rasset*, 692 F.3d 899, 910 (8th Cir., 2012) ("[i]f and when a jury returns a multi-million dollar award for noncommercial online copyright infringement, then there will be time enough to consider [whether or not such an award is excessive]") actually supports the notion that a possible amount of statutory damages may indeed violate Due Process. *See also St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67, 40 S. Ct. 71, 64 L. Ed. 139 (1919) (damages awarded pursuant to a statute violate Due Process if they are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.")  Because damages in this case have yet to be determined, it is appropriate for this defense to remain.

As for the fifth defense, failure to join indispensable parties, although it is self-evident from the responsive pleading, Mr. Blake's counsel has explained to plaintiffs' counsel that this refers to

the "others" who actually committed the direct infringement at issue in this case.  The failure to join these parties is obviously prejudicial to Mr. Blake, and this defense is entirely appropriate.

As discussed between counsel, the sixth defense was included by clerical error, and Mr. Blake stipulates that it should be struck.

The seventh defense, third-party conduct, is perfectly apt.  Although Mr. Blake believes that one or more third-parties committed the alleged infringement at issue, he denies having any contributory or vicarious liability for it.  Especially in the absence of any contrary legal citation by plaintiffs, this common and typical defense should stand.

### D.  Ryan Blake's Counterclaims Exceed the "Low Bar" of ORS 31.150.

The evidence that Mr. Blake can present easily surpasses the "low bar" established by ORS 31.150, even assuming that plaintiffs' various abusive acts since filing and prosecuting this case would qualify for statutory protection. Certainly, plaintiffs' demand that Mr. Blake pay for and undergo an inadmissible and unreliable polygraph test does not qualify.

As set forth above, Mr. Blake's deposition testimony constitutes substantial evidence of his personal innocence that has not and cannot be rebutted by plaintiffs' flawed and inherently limited remote IP address investigation. This is an unavoidable conclusion that has been recognized by this Court and countless others that have been forced to deal with the serious procedural and ethical problems posed by plaintiffs alleging infringement by online file-sharing, including plaintiffs here.

Thus, with Mr. Blake's exculpatory testimony in hand, plaintiffs had a duty to conduct further reasonable investigation to determine who was actually responsible for the infringement, including the anonymous "others" they reference in their complaint.  Instead, they willfully chose to sue just Mr. Blake, knowing that the evidence they had did not implicate him.  Instead of

rationally re-evaluating their course in response to his many demands and pleas for dismissal, plaintiffs then filed these expensive and unfounded Motions.  Even now, the Motions reflect that, lacking actual evidence of Mr. Blake's personal culpability, plaintiffs will instead offer their idle suspicions and inchoate, specious attacks on Mr. Blake's credibility. The cited excerpts from plaintiffs' complaint discussing extraneous matters related to their business interests and the broader operations of "torrent sites" reveals their ulterior motives, which can be supplemented by additional evidence that will be adduced as discovery proceeds. Beyond doubt, there is a probability that a rational jury would understand that plaintiffs have abused the legal process to the great detriment of Mr. Blake.  Mr. Blake has met his modest burden and is entitled to seek discovery on his counterclaims.

### III.    CONCLUSION

For years, the U.S. Courts have recognized the serious potential for abuse of legal process that arises from BitTorrent infringement cases just like the present litigation.  When plaintiffs here disregarded Mr. Blake's exculpatory testimony under oath, failed to conduct further investigation of the actually responsible parties, and acted so as to cause Mr. Blake to suffer financial losses, anxiety and emotional distress, that potential for abuse became real.  Under the circumstances, Mr. Blake is entitled to raise defenses and seek recompense through his counterclaims.  Plaintiffs' efforts to deprive him of these legal and equitable rights at the pleading stage are unfounded and without merit.  The Motions must be denied.

Respectfully submitted this 15th day of June, 2015.

By:  _/s/ Benjamin Justus_____
        Benjamin R. Justus (admitted *pro hac vice*)
        Lory R. Lybeck, OSB #832761
        Attorneys for Defendant Ryan Blake
        Lybeck Pedreira & Justus, PLLC.
        Fifth Floor – Chase Bank Building

7900 SE 28th Street
Mercer Island, WA 98040
(206) 230-4255 /phone
(206) 230-7791 /fax

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2015, I electronically filed the foregoing Defendant Ryan Blake's Response To Plaintiffs' Motions Against Answer And Counterclaims with the Clerk of the Court for the United States District Court for the District of Oregon by using the CM/ECF system, which will cause service to be issued upon all parties of record whom are participants in the system.

Respectfully submitted this __15th__ day of June, 2015.


*/s/ Margaret K. Sheridan*
Margaret K. Sheridan
Legal Assistant